UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES A. GIBSON,

        Plaintiff,                    Case No. 15-cv-12135

v.                                          Honorable Thomas L. Ludington

COUNTY OF PRESQUE ISLE and
ROBERT PASCHKE,

        Defendants.

_____/

**OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

On June 11, 2015, Plaintiff James Gibson filed this lawsuit against Defendants Robert Paschke and the County of Presque Isle. He alleged that Defendants unlawfully discriminated and retaliated against him on the basis of his age. Gibson amended his complaint on August 25, 2015 to include claims that Defendants discriminated and retaliated against him on the basis of his status as a disabled person. Gibson's claims are brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*., the Elliot Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101 *et seq*., the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, and the Persons with Disabilities Civil Rights Act ("PWDCRA"), Mich. Comp. Laws § 37.1202.

Defendants have moved for summary judgment on Gibson's claims of unlawful discrimination and retaliation based on age and unlawful discrimination based on disabled status.[1] Gibson timely responded. Defendants did not file a reply brief.

---

[1] Defendants' motion also sought summary judgment on Gibson's claim of retaliation in violation of the ADA and the PWDCRA. Those claims were resolved by stipulation while Defendants' motion was pending. Gibson

I.

James Gibson is a former police officer for the City of Onaway, in the County of Presque Isle. He began working as a police officer in 1986. He began working for the City of Onaway Police Department in 1999 and worked until his contract expired on May 1, 2013. He served all but six months of his tenure as chief of police.

Defendant County of Presque Isle is a Michigan county encompassing the City of Onaway. Defendant Robert Paschke is the sheriff of the County of Presque Isle Sheriff's Department.

A.

Sometime in late 2012 or 2013, the City of Onaway decided that it was no longer financially feasible to support a police department. With Gibson's contract with the City set to expire on April 1, 2013,[2] the City and the County discussed a plan under which Gibson would be hired as a deputy with the County of Presque Isle Sheriff's Department and still conduct patrols in the Onaway area. Onaway would subsidize $50,000.00 of Gibson's salary with the County until the County was able to hire Gibson into an available deputy position.

Discussions about eliminating the Onaway Police Department and moving Gibson to the Sheriff's Department began in earnest in March of 2013. The Onaway City Council held a meeting on March 6, 2013, which Defendant Paschke attended. During the meeting, the council discussed the proposed transfer of Gibson to the Sheriff's Department. Sheriff Paschke made the following comments, on the record, regarding the proposal:

---

also moved for summary judgment on Defendants' mitigation of damages defense. That motion was also resolved by the aforementioned stipulation.

[2] The Onaway City Council would eventually extend Gibson's contract by one month to allow for negotiations to continue.

> We're – we're working it out. But, you know, I – I feel I'm being a little strapped by it, you know. Especially when – with trying to keep Jim employed, all right, and I know that's the understanding and – and everything. But, you know, I'm putting it bluntly, okay. Do I want to hire a 57-year-old guy for his last four or five years of his – his career when I can hire a young 21-year-old out of the academy, you know? I mean, it's just something to think about. And I'm kind of, with this agreement, being forced into that.

March 6, 2013 Onaway City Council Mtg. 46–47, Ex. F, Pl.'s Resp. Br., ECF No. 23-7. Paschke's comment came in the midst of a discussion between him and the Onaway City Manager about the feasibility of transitioning Gibson to the Sheriff's Department.

**B.**

On April 1, 2013, Gibson's employment contract with Onaway expired. The City extended Gibson's contract for one month, until May 1, 2013, to allow for continued negotiations with the County.

Representatives of the City and County held a meeting on April 15, 2013, to discuss Gibson's potential transition to the Sheriff's Department. Gibson and Paschke were both present at the meeting. During the meeting, discussions between the City attorney and County attorney reached an impasse. At that point, Gibson became frustrated and left the meeting. According to the Paschke, Gibson stated "I don't need this" and pushed his chair back and left the room. Paschke Dep. 62–64, Ex. 2, Defs.' Mot. Summ. J., ECF No. 20-3. Paschke stated that Gibson did not use profanity and did not demonstrate any disrespect, simply frustration.

Gibson and Paschke spoke on the phone later that morning. During the call, Gibson expressed frustration with the negotiation process and indicated that he may "push for retirement and get the hell out of here." Gibson-Paschke Phone Call, Ex. 6, *id.*, ECF No. 20-7. This comment followed a discussion between Gibson and Paschke about the lack of progress at the meeting earlier that morning. Gibson indicated to Paschke that he was five years from retirement,

but may try to secure an early retirement agreement since the negotiations between the City and County appeared not to be bearing fruit.

## C.

Gibson's contract extension lapsed without the City and County reaching an agreement for Gibson to join the Sheriff's Department.

At some point after Gibson's contract expired, the County of Presque Isle Undersheriff, Joseph Brewbaker, was discussing Gibson's situation with a probation officer from the County. The probation officer asked Brewbaker why the Sheriff's Department does not hire Gibson as a deputy. Brewbaker responded that Paschke would never hire Gibson because he is too old and has a history of cancer.

## D.

In February 2014, the Sheriff's Department had a vacant deputy position and solicited applications for the job. Gibson applied. According to Paschke, Gibson was qualified for the position but he did not interview Gibson. In April 2014, Paschke hired a 29 year-old for the position.

Gibson met with Paschke in June 2014 to discuss potential openings in the Sheriff's Department. Gibson informed Paschke that he would like to work for the Sheriff's Department and asked what Paschke's reservations were about Gibson, since Paschke had passed over Gibson twice (once during negotiations and again for the February 2014 deputy position). Paschke responded to Gibson that he was concerned about Gibson's age. After the meeting, Paschke expressed to Undersheriff Brewbaker that the conversation between him and Gibson was positive and that he would consider Gibson for future openings.

Gibson filed a charge of discrimination with the Equal Employment Opportunity Commission on August 18, 2014. *See* August 18 Charge of Discrim., Ex. 10, Defs.' Mot. Summ. J., ECF No. 20-11. In the charge, Gibson alleged that Paschke did not hire him for the February 2014 deputy posting because of his age. Gibson served the August 2014 Charge on Paschke. According to Undersheriff Brewbaker, Paschke was not happy about the charge.

### E.

In October 2014, another deputy position became available with the Sheriff's Department. Once again, Gibson applied for this position. Paschke did not grant Gibson an interview. Undersheriff Brewbaker stated that this was "[b]ecause of all [the] stuff that happened, basically the – primarily was his attitude that he had portrayed over the last year and a half." Brewbaker Dep. 84–85, Ex. D, Pl.'s Resp. Br., ECF No. 23-5.

Paschke hired a 26 year-old applicant for the position.

### II.

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The focus must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted).

The Court must draw all reasonable inferences in favor of the non-movant when reviewing the evidence and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52, *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

### III.

Defendants have sought summary judgment on all of Gibson's remaining claims.[3] Defendants argue that Gibson cannot demonstrate direct or circumstantial evidence of age discrimination. They further argue that he cannot demonstrate a causal connection between protected activity and an adverse employment action sufficient to demonstrate retaliation under the ADEA and ELCRA. Finally, they argue that Gibson cannot demonstrate that he was discriminated against as a result of being regarded as disabled.

### A.

Defendants move for summary judgment on Gibson's claim that Defendants discriminated against him on the basis of his age. For Gibson to establish a prima facie case of age discrimination[4] he must demonstrate that: "(1) []he was at least 40 years old at the time of the alleged discrimination; (2) []he was subjected to an adverse employment action; (3) []he was otherwise qualified for the position; and (4) []he was replaced by a younger worker." *Tuttle v.*

---

[3] Save for Gibson's claim that he was discriminated against for having a record of a disability. This is discussed below at § III.C.

[4] Michigan age discrimination law under ELCRA follows federal ADEA law. *See Meagher v. Wayne State Univ.*, 565 N.W.2d 401, 410 (Mich. Ct. App. 1997).

*Metro. Gov't of Nashville*, 474 F.3d 307, 317 (6th Cir. 2007). Defendants concede that Gibson can meet these elements.

Defendants contend, however, that Gibson cannot demonstrate any direct or indirect evidence of discrimination or that Defendants' discriminatory animus was the "but for" cause of Gibson not being hired. Gibson argues that he can furnish both direct and indirect evidence that his age was the 'but for' cause of Defendants deciding not to hire him.

**1.**

Under the ADEA, if a plaintiff produces direct evidence of discrimination, the familiar *McDonnell-Douglas* burden-shifting framework does not apply. *Geiger v. Tower Auto.*, 579 F.3d 614, 621 (6th Cir. 2009). Direct evidence is evidence that "if believed, requires the conclusion that age was the 'but for' cause of the employment decision." *Scheick v. Tecumseh Pub. Sch.*, 766 F.3d 523, 530 (6th Cir. 2014). Put differently, "[d]irect evidence is evidence that proves the existence of a fact without requiring any inferences." *Id.* (quoting *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004)).

Gibson argues that a number of Paschke's comments about Gibson's age and his concern in hiring someone of Gibson's age qualify as direct evidence of discrimination. In particular, Gibson emphasizes Paschke's comments at the March 6, 2013 Onaway City Council meeting where Paschke stated:

> We're – we're working it out. But, you know, I – I feel I'm being a little strapped by it, you know. Especially when – with trying to keep Jim employed, all right, and I know that's the understanding and – and everything. But, you know, I'm putting it bluntly, okay. Do I want to hire a 57-year-old guy for his last four or five years of his – his career when I can hire a young 21-year-old out of the academy, you know? I mean, it's just something to think about. And I'm kind of, with this agreement, being forced into that.

March 6, 2013 Onaway City Council Mtg. 46–47, Ex. F, Pl.'s Resp. Br., ECF No. 23-7. Further, Paschke allegedly stated to the County of Presque Isle Prosecutor that the only reason he would not hire Gibson is because Gibson was too old.

Defendants attempt to paint Paschke's comments as observations about Gibson's experience and likely remaining service time. Pascke argues that "[c]ourts have repeatedly held that years of service, retirement, and experience, although all contain some level of age-related inferences, do not constitute direct evidence of age discrimination absent a showing that the term specifically serves as a proxy for age." Defs.' Mot. Summ. J. 20, ECF No. 20. But two of the cases Defendants rely upon involve comments that the plaintiff alleged was a proxy for age. Here, Paschke specifically invokes Gibson's age and contrasts hiring him with hiring someone much younger. This is the paradigm of direct evidence of age discrimination.

The third case relied upon by Defendants, *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 524 (6th Cir. 2007) (overruling recognized on other grounds), held that the defendant's comment that the plaintiff was "too old" to handle a certain account was not direct evidence of discriminatory termination on the basis of age. But the case is unhelpful to Defendants because the *Blair* court did conclude that it was direct evidence of age discrimination by the defendants in removing the plaintiff from the account in question. The *Blair* court determined that an inference was necessary to connect a comment about the plaintiff being too old to handle an account with the conclusion that he was also too old to work for the defendant.

Rather, *Blair* demonstrates how Paschke's comments are direct evidence of age discrimination. In *Blair*, the defendant said the plaintiff was too old to handle an account and removed the plaintiff from that account. Here, Paschke stated that he would rather hire a much younger employee as a sheriff's deputy and then proceeded not to hire Gibson (despite

conceding Gibson was qualified). The nexus between the comment and employment decision in *Blair* was direct, just as it is here. Because the employer in *Blair* did not reference the plaintiff's job status or capacity to more broadly serve in his position, it was not direct evidence of termination. Paschke, by contrast, made those exact assertions. He questioned whether someone of Gibson's age should be hired for a deputy position when younger individuals were available.

**2.**

Because Gibson can demonstrate direct evidence of discrimination, it is unnecessary to evaluate his claims under the *McDonnell-Douglas* burden shifting framework. Defendants' motion for summary judgment as to Gibson's age-discrimination claims will be denied.

**B.**

Next, Defendants move for summary judgment on Gibson's claim that he was retaliated against for filing a charge of age discrimination with the EEOC. The ADEA and ELCRA prohibit retaliating against an individual for filing a charge of discrimination with the EEOC. 29 U.S.C. § 623(d); Mich. Comp. Laws § 37.2701(a). To prove a prima facie case of retaliation, Gibson must show: "(1) that he engaged in protected activity; (2) that [Defendants] had knowledge of his protected conduct; (3) that [Defendants] took an adverse employment action towards him; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007).

Defendants concede that Gibson can meet the first three prongs of his prima facie case, but argue that he cannot establish a causal connection between his protected activity and his adverse employment action. Defendants argue that temporal proximity alone is insufficient to establish causal connection and cite to *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007) ("The law is clear that temporal proximity, standing alone, is insufficient to

establish a causal connection for a retaliation claim."). But the Sixth Circuit has specifically addressed this holding from *Tuttle*, and clarified that temporal proximity alone can indeed suffice to establish a causal connection in some cases. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523–26 (6th Cir. 2008) (discussing prior holding in *Tuttle*). Thus, the Sixth Circuit has held that, generally, a lapse in time of less than three months is sufficient, without more, to establish a causal connection between protected activity and an adverse employment action. *See, e.g.*, *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004) (holding that three-month span is sufficient to alone establish causal connection).

In Gibson's case, Paschke learned of Gibson's EEOC charge some time shortly after Gibson filed the charge on August 18, 2014. Paschke then refused to interview Gibson for the open deputy position that was posted in October 2014. Paschke filled that position on December 18, 2014. The time between when Paschke learned of the EEOC charge and when he decided against hiring Gibson is less than four months and, based on when the deputy position was posted, likely far less than three months.

But even if the four month gap is used, there is sufficient additional evidence to demonstrate a causal connection. The Sixth Circuit has held that in addition to a relatively short temporal proximity between protected activity and adverse action, anger on the part of the defendant at the plaintiff's protected activity suffices to prove a causal connection. In *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007), the decision-maker was angry about the plaintiff taking FMLA leave. The Sixth Circuit held that this was sufficient additional evidence to meet the minimal burden of proof at the prima facie stage. *Id*. (quoting *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)). Here, Gibson testified that Paschke rebuffed his handshake at a local festival shortly after Gibson filed the EEOC charge. Paschke contended that he did actually

shake Gibson's hand but admits to stating to Gibson "Really?" when he did so. Because of the limited interaction between the two in the period leading up to the run-in at the festival, a reasonable jury could conclude that Paschke was referencing Gibson's EEOC charge. This is sufficient for Gibson to meet his prima facie case.

1.

As with his claim of discrimination, Gibson contends that he can show direct evidence of discrimination. To do so he relies solely on testimony of Undersheriff Brewbaker. In *Wharton v. Gorman-Rupp Co.*, 309 F. App'x 990, 996 (6th Cir. 2009), the plaintiff successfully relied on the discriminatory comments of a non-decision-maker. The Sixth Circuit held the plaintiff could do so because the individual could "directly implicate[] all members of the hiring committee . . . in alleged discriminatory conduct." *Wharton v. Gorman-Rupp Co.*, 309 F. App'x 990, 996 (6th Cir. 2009). Importantly, when explaining the hiring committee's decision to the plaintiff, the alleged non-decision-maker in *Wharton* consistently used the term "we," which implicated the actual decision-maker. *Id*.

Undersheriff Brewbaker's comments, however, do not suffice as direct evidence. The comments Gibson relies upon are statements by Brewbaker during Brewbaker's deposition wherein he explains why he and Paschke did not entertain Gibson for an interview. While Brewbaker does implicate Paschke-as-decision-maker under *Wharton*, his comments do not meet the basic threshold for direct evidence. That is, Brewbaker's statements do not "prove[] the existence of a fact without requiring any inferences." *Scheick*, 766 F.3d at 530 (quoting *Rowan*, 360 F.3d at 548). Brewbaker only concedes that the discussions about not interviewing Gibson for the October 2014 opening occurred around the same time as Gibson's EEOC charge. He does not state that the EEOC charge was a factor in—let alone the sole reason for—deciding not to

- 11 -

interview Gibson. Thus, an inference is necessary to connect Brewbaker's comments to discriminatory animus. That is not direct evidence.

**2.**

Because Gibson cannot demonstrate direct evidence of discrimination, his claim of retaliation proceeds under the *McDonnell-Douglas* burden shifting framework. Since Gibson has established a prima facie case of discrimination, the burden shifts to Defendants to "produce evidence of a legitimate, nondiscriminatory reason for [their] actions." *Imwalle v. Reliance Med. Products, Inc.*, 515 F.3d 531, 544 (6th Cir. 2008). If Defendants meet this burden, "the plaintiff must then demonstrate by a preponderance of the evidence that the legitimate reason offered by the defendant was not its true reason, but instead was a pretext designed to mask retaliation." *Id.*

Defendants claim that Paschke "had concluded that Gibson would not be a good fit when Gibson applied for a vacant position in April 2014—before any EEOC complaint was filed." Defs.' Mot. Summ. J. 28, ECF No. 20. Defendants go on to argue that "nothing changed between the vacancy in April 2014 and the next vacancy in October 2014 to materially change Paschke's mind." *Id*. But Gibson directly rebuts this assertion by furnishing evidence of a conversation between Paschke and Gibson that occurred after Gibson was passed over for the February 2014[5] position and before Gibson filed the EEOC complaint (and so also before the October 2014 job posting). Gibson says the two discussed Paschke's concerns about Gibson's age and Gibson's health that (according to Gibson) was the basis for Paschke passing over Gibson for the prior position. Further, Undersheriff Brewbaker testified that following the conversation between Gibson and Paschke, Paschke changed his opinion about Gibson's suitability and was willing to

---

[5] The April 2014 position Defendants refer to was posted in February 2014.

consider him for future positions. This is sufficient to demonstrate that Defendants' reason for passing over Gibson for the October 2014 position were pretext for age discrimination.

## C.

Lastly, Defendants move for summary judgment on Gibson's claim of disability discrimination. The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The PWDCRA offers identical protections. Mich. Comp. Laws § 37.1202(a).[6] To establish a prima facie case of disability discrimination, Gibson must show that: "(1) he is disabled, (2) he is otherwise qualified to perform the essential functions of a position, with or without accommodation, and (3) he suffered an adverse employment action because of his disability." *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 433 (6th Cir. 2014). "The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Gibson alleges that he both is disabled (in that he has a record of a qualifying disability—cancer) and that he was regarded as disabled by Defendants. Both the ADA and the PWDCRA provide for recovery under these two theories of disability. *See* 42 U.S.C. § 12102(1)(B) (record of a disability) & (1)(C) (regarded as having such an impairment); Mich. Comp. Laws § 37.1103(d)(ii) (record) & (d)(iii) (regarded). Defendants have only sought summary judgment on Gibson's claim that he was regarded as having a disability by Paschke. Gibson's claim of having a record of a disability will survive Defendants' motion.

---

[6] The "Americans with Disabilities Act . . . and the PWDCRA share the same purpose and use similar definitions and analyses." *Chiles v. Mach. Shop, Inc.*, 606 N.W.2d 398, 405 (Mich. Ct. App. 1999).

Defendants claim that Gibson cannot meet the causation element of his "regarded as" claim of disability discrimination. Gibson responds by citing to his deposition testimony where he asserts that he had a discussion with Paschke and Paschke directly expressed to him that he had concerns over Gibson's age and health. There is some confusion in Gibson's testimony. In his deposition, Gibson seems to vacillate between claiming that Paschke definitely expressed concerns about his health directly to him and claiming that Paschke only raised a concern about his age. The primary basis for the claim that Paschke expressed concerns about Gibson's health comes from a note made by one of Gibson's physicians following Gibson's discussion with Paschke. The physician notes that Gibson said Paschke expressed concerns about Gibson's health.

Paschke's comments, as mediated through a doctor's report by one of Gibson's physicians, are of questionable admissibility.[7] During his deposition, however, Gibson states: "I basically went in to ask for a job. And I asked [Paschke's] concerns and the age was a concern of his as well as my health." Gibson Dep. 56, Ex. B, Pl.'s Resp. Br., ECF No. 23-3. If Gibson has a direct recollection of Paschke stating a concern about his health, the evidence is admissible as an admission by a party opponent and Gibson plainly states a prima facie case of discrimination. If Gibson only made that statement in his deposition because his recollection was refreshed by his doctor's notes, Paschke's alleged concerns about Gibson's health are likely inadmissible. The current record does not indicate under what conditions Gibson made the above statement. More evidentiary exposition is necessary to clarify those conditions. For now, however, the ambiguity must be interpreted in favor of Gibson. That interpretation requires a reading that Gibson furnished independent evidence of Paschke telling Gibson that he was concerned about Gibson's

---

[7] Similarly, Gibson relies on testimony by a County of Presque Isle probation officer who said Undersheriff Brewbaker told her that Paschke was concerned about Gibson's health. Both pieces of evidence raise significant hearsay concerns.

health. Under this construction, Gibson meets his burden of establishing direct evidence of disability discrimination.

Because Gibson can demonstrate direct evidence of discrimination, the *McDonnell-Douglas* burden shifting analysis does not apply. Defendants' motion to dismiss Gibson's disability discrimination claims will be denied.

### IV.

Accordingly, it is **ORDERED** that Defendants' Motion for Summary Judgment, ECF No. 20, is **DENIED**.

Dated: August 1, 2016
s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 1, 2016.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager

---